UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------

UNITED STATES OF AMERICA,

    v.                                                    No.   1: 94-CR-126(TJM)
                                                                 1: 94-CR-361(TJM)

WILLIAM S. STONNER,

    Defendant.

---------------------------------

THOMAS J. McAVOY
Senior United States District Judge

# DECISION and ORDER

## I. INTRODUCTION

On October 16, 1997, William S. Stonner pleaded guilty to one count of filing a false income tax return in violation of 26 U.S.C. § 7206, and one count of manufacturing marijuana in violation of 21 U.S.C. § 841. He was sentenced to a term of 78 months incarceration to be followed by five years of supervised release. See Amend. Judg. [dkt. # 267 in 94-CR-126]. Stonner commenced his term of supervised release on January 1, 2001, and his motion for early termination of supervised release was denied. See April 14, 2004 Order [dkt. # 303 in 94-CR-126]. Accordingly, Stonner is currently on supervised release until January 1, 2006.

On September 6, 2005, Stonner received a letter from the United States Probation Department for the Northern District of New York directing him to provide a DNA sample on September 22, 2005 in accordance with the requirements of federal law. On September 16, 2005,

Stonner made a motion for relief from this directive, citing the various grounds discussed below. The Government has opposed the motion. For the reasons that follow, the motion is denied.

## II. DISCUSSION

### A. DNA Analysis Backlog Elimination Act

In 2000, Congress enacted the DNA Analysis Backlog Elimination Act, 42 U.S.C. § 14135 et seq. ("DNA Act"). The DNA Act requires collection by a federal probation department of a deoxyribonucleic acid ("DNA") sample from anyone on parole, probation, or supervised release who had been convicted of a "qualifying Federal offense." See 42 U.S.C. § 14135a(a); United States v. Peterson, 394 F.3d 98, 105 (2d Cir. 2005). The DNA samples are collected by the Federal Bureau of Investigation ("FBI"), cataloged in the FBI's Combined DNA Index System ("CODIS"), and made available to federal and state law enforcement for use in criminal investigations. See 42 U.S.C. § 14135a.

As originally enacted, Stonner's crimes of conviction did not constitute a "qualifying Federal offense" under the DNA Act. See 42 U.S.C. § 14135a(d)(2000). However, in 2004, the DNA Act was amended by the Justice For All Act and now requires the probation department to collect DNA samples from, *inter alia*, persons on supervise release who were convicted of "any felony." 42 U.S.C. § 14135a(d)(2004). Stonner was convicted of two federal felonies and, therefore, he was directed to submit a blood sample for DNA collection. See United States v. Kincade, 379 F.3d 813, 817 (9th Cir. 2004)*(en banc)*.[1]

---

[1] In Kincade, the Ninth Circuit Court of Appeals explained:

Because the Federal Bureau of Investigation ("the Bureau") considers DNA information derived from blood samples to be more reliable than that obtained from other sources (in part because blood is

(continued...)

**B.  Separation of Powers**

Stonner first asserts that the DNA Act is unconstitutional because it violates the separation of powers doctrine.  In this regard, Stonner takes issue with the language of the DNA Act inasmuch as it allows the Attorney General to prescribe qualifying offenses.  See 42 U.S.C. § 14135a(d).[2]  He argues that when Congress vested "legislative power" in the Attorney General, an executive officer, it violated the separation of powers doctrine.

At the outset, the Court observes that Congress may delegate legislative authority to an executive body but the delegation must be subject to a "prescribed standard." United States v. Yousef, 327 F.3d 56, 116 (2d Cir. 2003).  The standard need not be precisely defined, but must be intelligible enough for the executive body to follow. Id.  In enacting the DNA Act and its amendment, Congress laid out several categories from which the Attorney General could exercise

---

[1](...continued)
easier to test and to preserve than hair, saliva, or skin cells), Bureau guidelines require those in federal custody and subject to the DNA Act ("qualified federal offenders") to submit to compulsory blood sampling. See Nancy Beatty Gregoire, FEDERAL PROBATION JOINS THE WORLD OF DNA COLLECTION, 66 Fed. Probation 30, 31 (2002).

379 F.3d at 817.

[2] Subsection (d) of the DNA Act currently provides:

(d) Qualifying Federal offenses

The offenses that shall be treated for purposes of this section as qualifying Federal offenses are the following offenses, as determined by the Attorney General:

>   **(1)** Any felony.
>
>   **(2)** Any offense under chapter 109A of Title 18.
>
>   **(3)** Any crime of violence (as that term is defined in section 16 of Title 18.
>
>   **(4)** Any attempt or conspiracy to commit any of the offenses in paragraphs (1) through (3).

42 U.S.C. § 14135a(d)(2004).

its authority to define a qualifying offenses. See 42 U.S.C. § 14135a(d). As a practical matter, this delegation is consistent with the Attorney General's law enforcement duties and does not violate the separations of powers doctrine. See Mistretta v. United States, 488 U.S. 361, 380-81 (1989); United States v. Sczulbelek, 402 F.3d 175, 187-89 (3d Cir. 2005)

More importantly, however, the Attorney General's exercise of this delegated authority does not affect Stonner. The DNA Act itself provides that a qualifying federal offense includes "any felony." Id. A person need not reference the Attorney General's regulations to determine whether Stonner has committed a qualifying Federal offense under the DNA Act. See 18 U.S.C. § 3559(a)(defining federal felonies); compare 28 C.F.R. § 28.2(a)("Felony means a Federal offense that would be classified as a felony under 18 U.S.C. 3559(a) or that is specifically classified by a letter grade as a felony.").

Further, a comparison of Section 14135a(d) of the DNA Act as amended, see fn. 2, *supra*, and the regulations promulgated by the Attorney General pursuant to the DNA Act, 28 C.F.R. 28.2, reveals that the exercise of authority by the Attorney General deals with those situations where a person has been convicted of crime that *might not* be defined as a felony, see 28 C.F.R. §§ 28.2(a), (b),[3] or where a person was convicted of a crime that "was or would have been a qualifying Federal

---

[3] Subsection (b) provides in relevant part:

(b) The following offenses shall be treated for purposes of section 3 of Pub.L. 106-546 as qualifying Federal offenses:

    (1) Any felony.

    (2) Any offense under chapter 109A of title 18, United States Code, even if not a felony.

    (3) Any offense under any of the following sections of the United States Code, even if not a felony:

(continued...)

offense ... at the time of conviction" but where "the provision or provisions defining the offense or assigning its penalties have subsequently been repealed, superseded, or modified." 28 C.F.R. 28.2(c). Because Stonner falls within the plain terms of the DNA Act, his separation of powers argument is without merit.

### C. Equal Protection

Equally unavailing is Stonner's argument that the Act violates the Equal Protection Clause. Although the Equal Protection Clause binds the states and not the Federal government, the Supreme Court has applied equal protection to the Federal government by way of the Fifth Amendment. See e.g. Bolling v. Sharpe, 347 U.S. 497 (1954). When reviewing an equal protection challenge, this Court must apply rational basis review unless the claimant belongs to a suspect class or the Act impinges upon a fundamental right. Story v. Green, 978 F.2d 60, 63-64 (2d Cir. 1992). Suspect classifications are based upon "immutable characteristics," Wygant v. Jackson Bd. of Educ., 476 U.S. 267, 301 (1986), such as race, age, or nationality. Lewis v. Thompson, 252 F.3d 567, 586 (2d Cir. 2001). By contrast, a claimant's status as a prior offender, Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996), prison inmate, Benjamin v. Jacobs, 172 F.3d 144, 165 (2d Cir. 1999), or sex offender, Roe v. Marcotte, 193 F.3d 72, 82 (2d Cir. 1999), is not a suspect classification. Classifications based upon the claimant's offenses of conviction are equally non-suspect. Id. Stonner's classification as a felon is not the result of an "immutable characteristic" of his nature; it

---

[3](...continued)

   \* \* \*

      (4) Any offense that is an attempt or conspiracy to commit any of the foregoing offenses, even if not a felony.

28 C.F.R. §§ 28.2(b)(emphasis added).

is the consequence of his voluntary guilty plea. He may not seek a bargained-for benefit by pleading guilty and then complain of the classification he voluntarily acquired. Because the Act fails to affect a suspect class or implicate a fundamental right, the Court must apply rational basis review.

Rational basis review presumes the validity of the Act and the government need only show that the Act is rationally related to a legitimate government interest. Id. The legislative history of the DNA Act reflects Congress's concern that law enforcement should maximize the full usefulness of DNA evidence. H.R. Rep. No. 108-711 (2004), reprinted in 2004 U.S.C.C.A.N. 2274, 2276-78, 2284. These concerns for effective identification of criminals and deterring recidivism are legitimate interests. So too is the interest in seeking settled convictions by providing for effective evidence and proper identification of guilty parties. The Act is rationally related to these interests by assembling a large pool of DNA from people who have already committed crimes. See 42 U.S.C. § 14135a. By collecting the DNA samples of convicted felons, the goals of deterrence and future identification are furthered. Because the Act is rationally related to these legitimate interests, it poses no equal protection problem.

### D. Fourth Amendment

Similarly, the DNA Act presents no violation of the Fourth Amendment protection against unreasonable searches and seizures. Although Stonner correctly argues that a compelled blood sample may be a search or seizure within the Fourth Amendment, Skinner v. Railway Labor Executives' Ass'n., 489 U.S. 602, 616 (1989), not all searches and seizures violate the Fourth Amendment. Id. at 619. The Skinner Court recognized the "special needs" exception to the general

requirement of probable cause, Id. at 619, and the Second Circuit has applied that exception when DNA profiling was challenged. Roe, 193 F.3d at 77.

The "special needs" exception applies when an important governmental interest would be furthered by the search or seizure and the privacy interests implicated are minimal. Id. at 78 (quoting Skinner, 489 U.S. at 624). While preferred, probable cause is not indispensable to a search or seizure in every circumstance. Id. at 78. Such important interests include institutional security, public safety, and maintaining order. Id. These interests prevail when balanced against a minimal invasion of privacy. Id. The list of important interests is not exhaustive, id. at 78-79, and here the interests of the government are both legitimate and important. As discussed in Roe, prevention of crime and effective identification and prosecution of criminals is an important interest. The invasion of privacy caused by the sampling must be weighed against these interests. Although the DNA is taken by a blood sample, "blood tests do not constitute an unduly imposition on an individual's privacy and bodily integrity." Id. at 79 (quoting Schermber v. California, 384 U.S. 757 (1966)). Because the government's important interests outweigh the minimal invasion of privacy, the DNA Act fits the "special needs" exception and does not amount to an unreasonable search or seizure. Id. at 79-82; Green v. Berge, 354 F.3d 675, 679 (7th Cir. 2004); United States v. Kimler, 335 F.3d 1132, 1146 (10th Cir. 2003).

Further, even applying the traditional totality of the circumstances analysis rather than the special needs analysis, see Johnson v. Quander, 370 F. Supp.2d 79, 86-87 (D.D.C. 2005),[4] and

---

[4] In Johnson, the District of Columbia District Court wrote:

[A]s the Ninth Circuit noted in [United States v. Kincade, 379 F.3d 813, 840 (9th Cir. 2004)(en banc)], courts are split as to the proper analytical framework to apply in resolving [Fourth Amendment

(continued...)

given the constellation of factors brought into issue by the DNA Act (as discussed above), collection of DNA through a blood sample does not violate the Fourth Amendment's reasonableness requirement. See United States v. Knights, 534 U.S. 112, 118-19 (2001)("The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'")(quoting Wyoming v. Houghton, 526 U.S. 295, 300 (1999)); Sczulbelek, 402 F.3d at 177 ("[W]e conclude that under Fourth Amendment reasonableness standard for analyzing the constitutionality of government searches and seizures, the collection of DNA samples from individuals on supervised release is constitutional.  The government's interest in building a DNA database for identification purposes, similar to its interest in maintaining fingerprint records, outweighs the minimal intrusion into a criminal offender's diminished expectation of privacy."); United States v. Kincade, 379 F.3d 813, 840 (9th Cir. 2004)*(en banc)*("In light of conditional releasees' substantially diminished expectations of privacy, the minimal intrusion occasioned by blood sampling, and the overwhelming societal interests so clearly furthered by the collection of

---

⁴(...continued)
Challenges to the DNA Act and similar state laws].  One set of courts, including the Ninth Circuit, have applied the traditional totality of the circumstances analysis to assess reasonableness and have concluded that the DNA Act (and similar state statutes) are constitutional. See Kincade, 379 F.3d at 831 (citing over twenty cases in which an assessment of the totality of the circumstances was utilized). On the other hand, other courts have upheld the constitutionality of the DNA Act (and similar state statutes) under a "special needs" analysis. See Kincade, 379 F.3d at 830-31 (citing twelve cases in which a special needs assessment was utilized).  While this Court believes that the DNA Act can be upheld under either analysis, for the reasons articulated by the Ninth Circuit in Kincade, this Court believes, as do a majority of other courts which have examined this issue, that the traditional totality of the circumstances analysis is the more appropriate legal framework under which to analyze this question.

370 F. Supp.2d at 86-87.

DNA information from convicted offenders, we must conclude that compulsory DNA profiling of qualified federal offenders is reasonable under the totality of the circumstances. Therefore, we today realign ourselves with every other state and federal appellate court to have considered these issues - squarely holding that the DNA Act satisfies the requirements of the Fourth Amendment."); Johnson, 370 F. Supp.2d at 88-89 ("Balancing the private and public interests here, it is clear that the public's interests far outweigh the plaintiff's interest and thus the taking of his DNA sample does not violate the Fourth Amendment, especially in light of the fact that the plaintiff, while he was on probation, has a diminished expectation of privacy.  In addition, the Court notes that the actual physical intrusion in securing a DNA sample is minimal.").

**E.  Commerce Clause**

Stonner's contention that the DNA Act is an unlawful exercise of Congress's power under the Commerce Clause is without merit. One district court rejected this argument on the grounds that Congress's exercise of power does not violate the Commerce Clause. See United States v. Reynard, 220 F. Supp.2d 1142, 1174 (S.D.Ca. 2002)("[T]he Court finds that Congress, under the second Lopez category, possessed the authority to enact the DNA Act under the Commerce Clause because the DNA Act regulates 'things in interstate commerce.'  While the DNA Act is not economic in nature, relevant authorities discussing the second Lopez category suggest that the requirement of an economic impact is relaxed when the regulation at issue pertains to 'things in interstate commerce.'")(citing to United States v. Lopez, 514 U.S. 549, 558-59 (1995)). Moreover, the DNA Act has been found to be "a legitimate exercise of congressional power under the Necessary

9

and Proper Clause." <u>United States v. Plotts</u>, 347 F.3d 873, 877 (10th Cir. 2003). Based upon the reasoning of these cases, the Court rejects Stonner's argument that the Congress exceeded its authority when it enacted the DNA Act and its amendments.

### F. Retroactivity

Stonner next argues that he is not subject to the DNA Act as amended because it does not apply retroactively to persons in his situation. Again, his argument is without merit. By its plain terms, the DNA act applies to "an individual on probation, parole, or supervised release . . . who is, *or has been*, convicted of a qualifying Federal offense. . . ." 42 U.S.C. § 14135a(2) (emphasis added). By providing that the DNA Act and its amendments are to apply to persons on supervised release who have previously been convicted of a Federal felony, Congress clearly contemplated application of the statute to persons in Stonner's situation. Congress' use of the past tense "has been" can only mean that it was its intention that the DNA Act apply to all past qualifying Federal offenses.

### G. Ex Post Facto Clause

Equally unavailing is Stonner's argument that application of the DNA Act violates the *ex post facto* clause of the United States Constitution. This argument has repeatedly been rejected, and this Court adopts the reasoning of those other cases. <u>See</u> <u>Rise v. State of Oregon</u>, 59 F.3d 1556, 1562 (9th Cir. 1995); <u>Jones v. Murray</u>, 962 F.2d 302, 308-10 (4th Cir. 1992); <u>see also</u> <u>Johnson v. Quander</u>, 370 F. Supp.2d 79, 95-99 (D. D.C. 2005); <u>Padgett v. Ferrero</u>, 294 F. Supp.2d 1338, 1344-45 (N.D. Ga. 2003), <u>aff'd</u>, 401 F.3d 1273 (4th Cir. 2005), <u>pet. for certionari filed</u>, 73 U.S.L.W. 3719 (June 2, 2005); <u>United States v. Stegman</u>, 295 F. Supp.2d 542, 547-48 (D. Md. 2003); <u>Vore v. United States Dep't of Justice</u>, 281 F. Supp.2d 1129, 1138 (D. Ariz. 2003); <u>United States v.</u>

Reynard, 220 F. Supp.2d 1142, 1157-1162 (S.D. Cal. 2002); Kruger v. Erickson, 875 F. Supp. 583, 589 (D. Minn. 1995), aff'd, 77 F.3d 1071 (8th Cir. 1996); Vanderlinden v. State of Kansas, 874 F. Supp. 1210, 1216 (D. Kan. 1995), aff'd, 103 F.3d 940 (10th Cir. 1996); Gilbert v. Peters, 1994 WL 369643, at *8 (N.D. Ill. 1994), aff'd, 55 F.3d 237 (7th Cir. 1995). As those cases have noted, the DNA Act was not intended to be punitive, but as a regulatory and law enforcement tool.

### H. Plea Agreement Terms

Finally, Stonner argues that he cannot be subjected to the DNA Act because no mention of the DNA Act, or the requirement that he provide a DNA sample, was provided for in his Plea Agreement. The argument is wholly without merit. First, as the Government points out, the plea agreement dealt with the crimes Stonner agreed to plead guilty to and the Government's recommendations as to his sentence. It did not deal with the specific terms of his supervised release, or with any other collateral consequence of his conviction. Second, in entering his guilty plea pursuant to the plea agreement, Stonner was advised, as are all others, that the Court was not bound by any agreement between the parties as to the sentence to be imposed. Thus, assuming arguendo that submission of a DNA sample was a term of Stonner's sentence and that the parties came to some agreement about it, the Court would not have been bound by that agreement anyway. Third, the DNA Act had not be passed at the time the parties entered the plea agreement, and, therefore, it would have required a clairvoyant to know that the DNA Act would become law during the time of Stonner's supervised release. Stonner got the benefit of his bargain given the facts and law as it existed at the time the agreement was entered into. Fourth, any agreement to disobey Congress's enactments, whether existing at the time or in the future, would have been *void ab initio,* or rendered as such at the moment the DNA Act became applicable.

11

**III.  CONCLUSION**

For the reasons set forth above, Stonner's motion for relief from the requirements of the DNA Analysis Backlog Elimination Act, 42 U.S.C. § 14135 et seq., is **DENIED**.  **WILLIAM S. STONNER** shall report to the United States Probation Department in Albany, New York on December 21, 2005 at 10:00 a.m., and shall, at that time, provide a blood sample for purposes of DNA collection.  Failure to so comply will be interpreted, *inter alia*, as a violation of the terms of Stonner's supervised release.

**IT IS SO ORDERED**.

DATED: November 22, 2005

_____
Thomas J. McAvoy
Senior, U.S. District Judge